WESTLAKE *v.* DUNCAN, DIECKMAN, AND DUNCAN
MINING CO., INC.

5-1389                                    307 S. W. 2d 220

Opinion delivered December 2, 1957.

*Collins, Edwards, Core & Collins,* for appellant.

*Nabors Shaw,* for appellee.

PAUL WARD, Associate Justice. The principal issue involved on this appeal may be stated as follows: Where a public road way has been established by prescription over which wagons and automobiles have passed for several years, does the use of such road by heavy trucks hauling manganese ore constitute such an extra burden that it should be prohibited? Further issues involved will also be considered.

Appellant, N. C. Westlake, owns and resides upon land in Polk County near state highway No. 8, which land he purchased in 1950. A road leaves highway No. 8 and runs across appellant's property and thence in an easterly direction passing near where appellee is carrying on certain mining operations. In 1956 appellant placed a wire gap gate on the road and attempted to

close the same, or to reduce and restrict the use thereof. Appellee sought and received injunctive relief as a member of the public entitled to the benefits of the prescriptive right to the road.

The record contains a great deal of testimony regarding the usage made of said road over the past 50 years. Appellee introduced the testimony of several witnesses tending to show that the public had used the road adversely for more than 7 years, and that consequently the public had acquired the right to use the same as a public highway. It is not necessary to set out this testimony or the testimony introduced to refute the same, because, on this appeal, appellant apparently concedes the establishment of such a public highway. We make the above statement for these reasons: Appellee, at the beginning of its argument, makes the statement that "Appellant in his brief concedes that the public has acquired a prescriptive right to use the road way in question;" and appellant does not refute this statement in his reply brief. Also, none of the points relied on by appellant for a reversal question the court's finding that a public highway had been acquired by prescription.

Appellant sets out five distinct and different grounds for a reversal, but because of the view which we take of the matter, it will be necessary for us to discuss only three of these points, which are: 1. Appellee had no right to subject the highway to any use other than that type of use which gave rise to the prescriptive right in the first instance; 2. Appellee failed to prove the existence of an obstruction of the highway; 3. Appellee failed to prove the course and boundaries of the highway over appellant's land. We shall now discuss these points mentioned in the order above.

*One.* Appellant raises the very interesting question that, although it be conceded that the public had acquired a right of way over the appellant's land, appellee had no right to impose a greater burden on the prescriptive right of way than the usage which created the right of way. The testimony shows that the road in question

had been used by people traveling on foot, on horseback, in wagons and in automobiles, but that appellee was running heavy trucks over the road in order to haul manganese ore from its mine to highway No. 8. Without setting forth the testimony in order to determine whether or not appellee's usage of the roadway created a greater burden than the former usage, it may be conceded for the purposes of this opinion that appellee's usage of the road did amount to an increased burden. The interesting question is whether or not this fact justified appellant in closing the roadway.

Appellant relies upon several early authorities to substantiate his contention, but an examination of these authorities seems to reveal that the prohibition against an increased burden relates only to a private easement. One of the cases cited by appellant (*Ballard* v. *Dyson,* 127 Eng. Rep. 841) dealt with a building which had formerly been used as a stable and the question was whether it could be used as a slaughter house. In another case (*Lynch* v. *White,* 85 Conn. 545, 84 Atl. 326) the court was dealing with a walk-way in connection with a public garage. We find from our search of these and other authorities that our courts do recognize the well established principle that, *in case of a private easement,* as contrasted with a public highway, it is not permissible to impose a burden which is greater than the use which brought the private easement into existence. We do not find, however, that the same rule has been applied to a public highway acquired by prescription. Although our own court has not heretofore made the clear cut distinction we have indicated, we think it logically exists and should now be recognized. Once highways have been acquired by prescription for public use, they should be open for all uses reasonably foreseeable. This thought is expressed by Elliott on Roads and Streets, 4th Edition, Vol. 1, page 14, where it is stated that roads generally used by the citizens of a locality, but open to the general public, are public roads, although they may afford facilities for travel to only such persons as reside in the neighborhood and may not be useful to the general

public. It is, however, essential that such a road should be one open to the public, and free and common to all citizens. Following the above the author recognizes that there should be a limit to the burden which can be placed even on a public highway. This limit, he says, should be that the burden does not destroy the purpose for which such road is normally and generally used. We think this limitation is both logical and reasonable.

*Two.* We cannot agree with appellant that there was a failure to prove the existence of an obstruction to the roadway. The Chancellor found, and we agree, that appellant placed barbed wire gates across the road in 1956, and that he refused to remove them. This constituted an interference with the right of the general public and with the right of the appellee in particular to travel over the said road.

Appellant, however, points to the case of *Wynn* v. *Hale,* 227 Ark. 765, 301 S. W. 2d 466. In that case the Chancellor had ordered Wynn to remove a gate from across the highway, but this court reversed the holding saying "We have concluded that the court erred in holding that the gates and cattle guards were obstructions and should be removed." We agree that the holding in that case appears to be in point and is in support of appellant's contention here. However, there is this distinct difference which does not plainly appear from a casual reading of the opinion. In the cited case the gates were not across the main highway. The record shows there were cattle guards on the main highway, but there was a side road going around the cattle guard, and that this was the road which was closed by the gate. Of course that is not the situation in the case under consideration.

*Three.* Appellant states that "The burden was upon the plaintiff (appellee) to prove that a prescriptive right to use the road existed in the public at the time suit was filed and failed to do so." Apparently appellant meant that appellee did not accurately describe the location of the road. If that is what is meant then we cannot agree with him. In fact this was not made

an issue at the trial. At any rate all of the testimony shows without doubt that there was only one road which all the witnesses were talking about and that is the one involved here. Under this same heading however appellant makes the statement that the burden was upon the appellee to prove that a prescriptive right to use the road still existed, and that they failed to do so. This question is fully answered by the findings of the Chancellor which are, we think, amply sustained by the testimony in this case. There is no convincing proof that the road had been abandoned for a period of seven years.

In view of what we have heretofore said, it follows that the decree of the trial court must be, and is hereby, affirmed.

Affirmed.